UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| OTTIE R. NOBLE, | ) |
| Plaintiff, | ) |
| v. | ) CV 97-BU-2493-M |
| THE UNITED STATES OF AMERICA, | ) |
| Defendant. | ) |

Memorandum Opinion

  Ottie R. Noble filed this action against the United States seeking to recover under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671 et seq., for the alleged negligent or willful failure of the Office of Workers' Compensation Programs ("OWCP") to authorize in a timely manner the payment of benefits under the Federal Employees' Compensation Act ("FECA"), 5 U.S.C. § 8180 et seq., for a surgical procedure to correct an injury to his back he sustained during the course of his federal employment and for which he is receiving FECA benefits. The United States filed a motion to dismiss the original complaint (Doc. No. 9), which the Court has previously informed the parties will be treated as a motion for summary judgment. See Fed. R. Civ. P. 12(b) & 56. Thereafter, Mr. Noble filed an amended complaint, asserting claims under the FTCA to the effect that the OWCP's conduct in the case gave rise to the torts of outrage and "intentional interference in the employee physician relationship" and breached an alleged duty to exercise "keen judgment . . . in all claims processing." The United States then filed a motion to dismiss the amended complaint (Doc. No. 21), as well as motions to strike demands in the amended complaint for equitable relief, prejudgment interest, attorney's fees, and punitive damages. (Doc. Nos. 18, 19, 20). Finally,

the United States filed a motion for leave to file additional argument in support of its motion to dismiss the amended complaint, attaching the additional argument to be considered. (Doc. 23). All of these motions, however, have been held in abeyance as this Court has issued orders staying this action pending a determination by the Department of Labor regarding whether the aggravation of Mr. Noble's back condition caused by a delay in having surgery is itself an injury within the scope of coverage under the FECA. The Department of Labor has now issued its responses to Mr. Noble's application for additional FECA benefits, and the Court will order that the stay in this action is due to be LIFTED. The Court will GRANT the United States motion to file additional argument on the motion to dismiss the amended complaint (Doc. No. 23) and accordingly will consider the argument contemporaneously submitted with that motion. The Court finds that while the responses of the Department of Labor clearly indicate that Mr. Noble was denied additional FECA benefits for certain <u>items of damage</u> for the aggravation of his back condition allegedly stemming from the OWCP's delay in authorizing surgery, the responses also show that Mr. Noble has been receiving and will continue to receive benefits for the items of damage that are authorized under the FECA for the <u>entirety of his back injury</u>, including any aggravation of which he now complains. Therefore, the Court determines that the exclusivity provisions of the FECA preclude Mr. Noble from recovering under the FTCA for the alleged aggravation of his back injury caused by a delay in having surgery. The Court also concludes that even assuming the FECA does not preclude Mr. Noble's claims, he otherwise cannot recover under the FTCA. Therefore, the United States motion to dismiss the original complaint (Doc. No. 9), which the Court treats as a motion for summary judgment, will be GRANTED. The Court also rules that the United States motion to dismiss the amended complaint (Doc. 21) is due to be GRANTED. In light of these rulings, the United States motions to strike demands in the amended complaint for equitable relief, prejudgment interest, attorney's fees, and punitive damages (Doc. Nos. 18, 19, 20) will be deemed MOOT.

I. FACTS[1]

In its memorandum opinion entered March 3, 1998 (Doc. No. 24), the Court extensively detailed the facts underlying this action. Therefore, the Court will here recite the material facts with far more brevity: It is undisputed that Mr. Noble was a Federal Bureau of Prisons employee who was injured on the job while receiving self-defense training January 27, 1994. Mr. Noble was later examined by a Dr. James G. White, III, a neurosurgeon who recommended in late May or early June 1994 that he undergo corrective back surgery. Notwithstanding its receipt of such a recommendation, the OWCP, which was responsible for processing Mr. Noble's FECA claim, did not initially authorize the release of benefits to pay for such surgery and arranged for Mr. Noble to be examined by several other doctors. These doctors recommended further testing and were equivocal about the propriety of Mr. Noble undergoing surgery. Eventually, Mr. Noble sought the opinion of another neurosurgeon, Dr. Terry Andrade, who examined Mr. Noble and concurred with Dr. White that the surgery should be performed, and Dr. Andrade forwarded his report containing this recommendation to the OWCP in July and October 1995. The OWCP, however, did not approve the payment of benefits for the procedure until January 3, 1996. There was thus an approximate 19-month delay between the time Dr. White first recommended surgery and the time the OWCP actually approved benefits to cover the medical expenses for the procedure. Dr. Andrade performed the surgery on January 26, 1996, but it proved unavailing, as Mr. Noble continued to complain of pain and discomfort in his neck and arms.

II. CONTENTIONS & ANALYSIS

A. The Claims that the OWCP Negligently and/or Willfully Failed to Authorize FECA

---

[1] "The facts set out below are gleaned from the parties' submission of facts claimed to be undisputed, their respective responses to those submissions, and the court's own examination of the record. These are the 'facts' for summary judgment purposes only. They may not be the actual facts. See Cox v. Administrator U.S. Steel & Carnegie, 17 F.3d 1386, 1400 (11th Cir. 1994)." Underwood v. Life Ins. Co. of Georgia, 14 F.Supp. 2d 1266, 1267 n.1 (N.D. Ala. 1998).

Benefits for Surgery Expenses in a Timely Manner

In his original complaint, Mr. Noble alleges that his on-the-job back injury was subsequently aggravated by a delay in his having the corrective surgery, and he claims that this delay was the result of the OWCP's negligent and/or willful failure to authorize the payment of benefits to cover the medical expenses associated with the procedure. Mr. Noble contends that he might recover damages from the United States for pain and suffering, loss of employment, loss of retirement benefits, loss of quality of life, and loss of income under the FTCA for the subsequent aggravation of his back injury. The United States has moved to dismiss these claims, arguing that the exclusivity of remedy provisions of the FECA preclude Mr. Noble from recovering under the FTCA for the alleged subsequent aggravation of his work-related back condition. As noted hereinabove, the Court has previously informed the parties that it would treat the United States motion to dismiss the claims in the original complaint as a motion for summary judgment.

Summary judgment provides the parties an invaluable opportunity to test the mettle of a case before it ever reaches trial. On a motion for summary judgment, the court assesses all of the proof the parties can bring to bear in order to ascertain whether a genuine need for trial is present. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). Summary judgment is weighed heavily in favor of the non-movant; it is appropriate only if the court concludes that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

A party seeking summary judgment has the initial responsibility of informing the Court of the grounds for its motion and specifically identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits that it believes demonstrate the absence of a genuine issue of material fact. Id. at 323. The movant's burden is not meager; he must "point to materials on file that demonstrate that the party bearing the

burden of proof at trial will not be able to meet that burden." Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). Thus, it is never enough simply to state that the non-moving party cannot meet its burden at trial. Id. Once the moving party has satisfied its initial burden, however, the nonmoving party "must make a sufficient showing to establish the existence of each essential element to that party's case, and on which that party will bear the burden of proof at trial." Howard v. BP Oil Company, 32 F.3d 520, 523 (11th Cir. 1994). Rule 56(e) requires the nonmoving party to "go beyond the pleadings" and by "affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts'" showing there exists a genuine issue for trial. Celotex, 477 U.S. at 324; Cottle v. Storer Communication, Inc., 849 F.2d 570, 575 (11th Cir. 1988).

In resolving whether a given factual dispute requires submission to a jury, the court must inspect the presented evidence through the looking glass of each party's substantive evidentiary burden. Anderson, 477 U.S. at 254-55. "It is not part of the court's function, when deciding a motion for summary judgment, to decide issues of material fact, but rather decide whether such issues exist to be tried. The Court must avoid weighing conflicting evidence or making credibility determinations." Hairston v. Gainesville Sun Publishing Co., 9 F.3d 913, 919 (11th Cir. 1993). In making its determination, a district court must view the record in the light most favorable to the nonmoving party and resolve all reasonable inferences in the nonmovant's favor. Rooney v. Watson, 101 F.3d 1378, 1380 (11th Cir. 1996) (citing Hale v. Tallapoosa Co., 50 F.3d 1579, 1581 (11th Cir. 1995)). At the same time, "[t]he nonmoving party must provide more than a mere scintilla of evidence to survive a motion for judgment as a matter of law; 'there must be a substantial conflict in evidence to support a jury question.'" Tidwell v. Carter Products, 135 F.3d 1422, 1425 (11th Cir. 1998) (citing Carter v. City of Miami, 870 F.2d 578, 581 (11th Cir.1989)).

FECA provides workers' compensation coverage for federal civilian employees who are injured while in the performance of their duties. 5 U.S.C. § 8102(a). It is the exclusive remedy

against the United States for any federal employee whose injuries fall within the scope of the statute and precludes recovery under a federal tort liability statute. 5 U.S.C. § 8116(c). See Woodruff v. United States Department of Labor, Office of Workers Compensation Program, 954 F.2d 634, 636 (11th Cir. 1992). Gill v. United States, 641 F.2d 195, 197 (5th Cir. Unit A February 17, 1981).[2] In fact, the district courts may not entertain FTCA suits if there is even a "substantial question" as to whether the plaintiff's injury falls within the scope of coverage under the FTCA. See Avasthi v. United States, 608 F.2d 1059 (5th Cir. 1979); Bailey v. United States, 451 F.2d 963 (5th Cir. 1971). It was this Court's previous finding that a "substantial question" as to FECA coverage did exist that was the impetus for staying the action pending a determination of the issue by the Secretary of Labor. See Concordia v. United States Postal Service, 581 F.2d 439 (5th Cir. 1978).

At this Court's behest, Mr. Noble's counsel made a number of applications on behalf of his client to the Department of Labor, seeking additional FECA benefits to compensate him for various items of damage he claims to have suffered as a result of postponing corrective back surgery, which was in turn purportedly caused by the allegedly negligent or willful failure of the OWCP to authorize benefits to cover costs associated with his surgery in a timely fashion. After this Court stayed this action by its order of March 19, 1998, Mr. Noble's counsel first wrote an informal letter to the Department of Labor asking whether his client would be eligible for FECA benefits for the "pain and suffering" Mr. Noble allegedly endured from the aggravation of his on-the-job injury as a consequence of the delay in having surgery, claiming that such was caused by the OWCP's slow handling of his claim. Christina Steven, a Senior Claims Examiner with the OWCP, responded that FECA does not provide for the payment of benefits to compensate for "pain and suffering." However, she also explained that the OWCP

---

[2] In Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir.1981) (en banc), the United States Court of Appeals for the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit rendered prior to the close of business on September 30, 1981.

"will consider a claim for consequential medical conditions that may have developed due to Mr. Noble's surgery," (emphasis omitted) and that the "subsequent surgery resulting in a cervical fusion is also considered related to Mr. Noble's Federal injury."

After the Court issued an order denying that this informal correspondence established Mr. Noble's injuries were outside the scope of FECA coverage, Mr. Noble's counsel made a more formal inquiry for additional benefits for "physical pain and suffering, loss of employment, loss of retirement benefits, loss of quality of life and loss of income" associated with the aggravation of his back condition, allegedly caused by the OWCP's delay in approving his claim for medical expense benefits. In a memorandum dated October 19, 1998, another Senior Claims Examiner, Jennifer Valdivieso, denied that Mr. Noble was entitled to additional benefits for such damages. She explained:

> Mr. Noble has been paid appropriate compensation [under the FECA] for total disability for the entire period of his disability and continues to receive compensation. . . . There are no provisions in the [FECA] for monetary payment to employees beyond the total disability rate, which Mr. Noble has already received.
>
> . . . .
>
> If Mr. Noble's cervical condition has caused a permanent partial impairment to either of his upper extremities, he may be eligible for . . . an award. I have reviewed the file and cannot find any reference to an upper extremity impairment resulting from the cervical condition and subsequent surgery. I have found only Dr. Andrade's opinion, from June 1996, that Mr. Noble has an eight percent impairment to the body as a whole. If this is an issue Mr. Noble would like to pursue, I would ask that he have his attending physician submit a detailed statement outlining any resultant extremity impairment, without his opinion regarding the total percentage of impairment in accordance with the AMA Guides, 4th edition. . . .
>
> Since all compensation payments and work related medical expenses have been paid, and will continue to be paid, Mr. Noble is not entitled to any further payments above and beyond that from this office. Section 8116(c) provides for exclusiveness of remedy with regard to work related injuries and deaths. . . . The injury or death of an employee gives rise to no right to recover damages from the United States exclusive of the Act.

> It is regrettable if Mr. Noble has suffered more because of his not obtaining surgical relief[. H]owever, our office has paid all benefits possible to Mr. Noble consistent with the provisions of the [FECA].

After this Court again refused to lift the stay based upon Ms. Valdivieso's letter, Mr. Noble was required to appeal the denial of additional FECA benefits. In a letter dated July 19, 1999, Jacqueline Neugent, a Hearing Representative for the Director of the OWCP, affirmed the denial of additional benefits, essentially echoing Ms. Valdivieso's earlier letter; she explained that the items of damage sought by Mr. Noble were not within the items of compensation afforded by the FECA and that Mr. Noble was already receiving all the benefits to which he was entitled under the FECA for his back condition.

Mr. Noble acknowledges that he cannot recover benefits under FECA for pain and suffering, loss of employment, loss of retirement benefits, loss of quality of life and loss of income for the aggravation of his work-related back injuries. The responses from the Department of Labor confirm this fact, which means, he argues, that he should be allowed to proceed under the FTCA to attempt to recover those damages for the subsequent aggravation of his back injuries. This argument, however, reveals a misunderstanding regarding the operation of the exclusivity-of-remedy provision of the FECA. As the Court explained in some detail in its order of December 7, 1998, a finding by the OWCP that Mr. Noble is not entitled to recover additional FECA benefits for certain <u>items of damage</u> relating to the subsequent aggravation of his back condition does not equate with a determination that the aggravation is not an injury is not covered under the FECA. "The program FECA establishes is similar in structure and policy to state workers' compensation programs. The heart of the system is an implicit bargain: employees are granted surer and more immediate relief in return for foregoing more expensive awards outside the system." <u>Gill v. United States</u>, 641 F.2d at 197 (citation omitted). <u>See also</u> <u>Lockheed Aircraft Corp. v. United States</u>, 460 U.S. 190, 193-94 (1983). The United States Court of Appeals for the Third Circuit has explained what limited but

relatively assured immediate relief is available to an injured federal employee in the form of benefits under the statutory scheme of the FTCA:

> "Employees of the United States government . . . may recover under FECA for their wages lost and medical costs incurred as a result of injuries sustained in the performance of their duties. §§5 U.S.C. 8102(a), 8103(a), 8105, 8106. However, compensation for lost wages, whether the loss results from permanent or temporary disability, is limited to two-thirds of the employee's pay at the time of injury if the employee has no dependents, or three-quarters of the employee's pay at the time of injury if the employee has one or more dependents. §§5 U.S.C. 8101(4), 8105, 8106, 8110."

Miller v. Bolger, 802 F.2d 660, 662 (3rd Cir. 1986). Thus, in no case may a federal employee recover FECA benefits to compensate him for other items of damage such as "pain and suffering" endured because of a work-related injury, but no one believes that this allows an injured employee to sue under the FTCA to recover such damages for an injury that is within the scope of the FTCA. See, e.g., United States v. Lorenzetti, 467 U.S. 167, 169 (1984) ("Because the United States' liability for work-related injuries under FECA is exclusive, see § 8116(c), respondent cannot recover from the United States for losses such as pain and suffering that are not compensated under FECA.") But that is just what is implied by Plaintiff's argument that he might recover for the aggravation of his back condition under the FTCA because he cannot receive compensation for the items of damage he wants under the FECA. The scope of relief available under the FTCA is always more generous, although less assured of receipt, than that under the FECA. But whether Mr. Noble is entitled to additional FECA benefits for the items of damage to which he claims entitlement under the FTCA is simply immaterial to the issue of whether the aggravation of his back condition is an injury compensable under the FECA, which is the sole concern of this Court. If the aggravation of his on-the-job injury is compensable under the FECA, then 5 U.S.C. § 8116(c) establishes that the limited benefits available under that act are Mr. Noble's only remedy as against the United States, notwithstanding that he might want damages for other items that would otherwise be

recoverable under the FTCA.

After reviewing the responses provided by the Department of Labor, this Court is now certain that the Secretary of Labor considers the subsequent aggravation of Mr. Noble's back condition to be covered by the FECA. As emphasized by Mr. Noble, each correspondence from the Department of Labor does indeed reject his claim for additional benefits. However, there is nothing indicating that these denials were based upon a determination that the aggravation of Mr. Noble's back injury was not compensable under the FECA. Rather, the responses of the Department of Labor deny the additional benefits sought by Mr. Noble on the grounds (1) that FECA's statutory scheme does not authorize payment for the items of damage to which Mr. Noble claims entitlement and (2) that he was already receiving the appropriate amounts for all items of damage that are compensable under the FECA. Indeed, a close reading of the responses to Mr. Noble's inquiries shows that the Department of Labor does consider Mr. Noble's back condition as a whole, including any subsequent aggravation, to be a compensable injury within the scope of FECA coverage. Ms. Steven's letter expressly states that the OWCP will consider a claim for "consequential medical conditions that may have developed due to Mr. Noble's surgery" and that his counsel might "establish . . . additional conditions . . . consequential to Mr. Noble's injury and surgery." Similarly, Ms. Valdivieso's letter contemplates Mr. Noble's eligibility for FECA benefits in terms of potential impairments "resulting from [his] cervical condition and subsequent surgery." Moreover, by inviting Mr. Noble to submit further evidence in support of any additional alleged impairments following his surgery, she clearly implies that Mr. Noble's current cervical condition as a whole, including any subsequent aggravation, is compensable under the FECA. As such, the exclusivity-of-remedy provision of the FECA precludes this court from considering FTCA claims against the United States for the subsequent aggravation of Mr. Noble's back condition. This is in accord with decisions of other courts holding that FTCA claims by federal employees for the subsequent aggravation of work-related injuries are barred because such aggravation is

compensable under the FECA. See, e.g., Lance v. United States, 70 F.3d 1093 (9th Cir. 1995); McCall v. United States, 901 F.2d 548, 550-51 (6th Cir. 1990) and cases cited therein; Balancio v. United States, 267 F.2d 135, 137 (2nd Cir.) (Hand, J.) ("[T]he aggravation of [plaintiff's] initial injuries, suffered while he was indubitably in performance of his duty, should be regarded as resulting from the initial injuries themselves.... [T]hat is the rule at common-law when the claim is for negligence; the initial wrong is the cause of all that follows, even when there has intervened a succeeding negligent act that produced the aggravation. We interpret [FECA] as a substitute for the whole of the claim that, but for it, would have arisen under the Tort Claims Act."), cert. denied, 361 U.S. 875 (1959).

### B. The "Bad Faith" Claim

The claims of the original complaint might be easily characterized as assertions that the OWCP, acting on behalf of the United States as Mr. Noble's workers' compensation carrier, acted in bad faith when it allegedly failed to authorize the payment of FECA benefits for his corrective surgery in a timely manner. This cause of action would also seem to encompass the claim in Mr. Noble's amended complaint that the OWCP failed to exercise "keen judgment" in the processing of his claim. However, one court of appeals seems to have summarily rejected the viability of a FTCA "bad faith" claim against the United States for failure to pay FECA benefits. See Miller v. United States, 62 F.3d 1411 (table), 1995 WL 434798, **3 n. 11 (1st Cir. 1995) ("Miller argues that Martin v. Travelers Ins. Co., 497 F.2d 329 (1st Cir.1979), authorizes him to sue under the FTCA for the bad faith processing of his workers' compensation claim, [but that case does not] stand[ ] for the proposition for which Miller cites it.").

Moreover, the Court concludes that Mr. Noble cannot recover against the United States on a claim of bad faith failure to pay his FECA claim because the substantive state law Mr. Noble claims would govern does not permit an employee to maintain a "bad faith" claim against his employer's workers' compensation carrier for failure to pay workers' compensation benefits.

> The FTCA provides that '[t]he United States shall be liable [for torts committed by its employees while acting within the scope of their employment] in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages.' §28 U.S.C. 2674. See also §28 U.S.C. 2672. Because the United States is liable in the same manner and to the same extent as a private individual, its liability is determined under the laws of the state in which the act or omission giving rise to the cause of action arose, see Richards v. United States, 369 U.S. 1, 11-12 [ ] (1962); Howell v. United States, 932 F.2d 915, 917 (11th Cir.1991).

Childs v. United States, 923 F.Supp. 1570, 1581 (S.D. Ga. 1996). There appears to be at least some question as to whether Alabama or Florida law would apply to the FTCA claims alleged here, but the Court will assume for the purposes of the pending motions that Mr. Noble is correct in his position that Alabama law would apply. And it is well established that under Alabama law that a tort claim against a workers' compensation carrier alleging a bad faith failure to pay an insurance claim is barred by the exclusivity provision of the Alabama Workers' Compensation Act. Stewart v. Matthews Industries, Inc., 644 So.2d 915, 917 (Ala. 1994). So even if the United States were a private entity acting as Mr. Noble's workers' compensation carrier, it could not be liable under Alabama law for the tort of bad faith failure to pay a workers' compensation claim. Therefore, Mr. Noble cannot maintain such a claim under the FTCA, and the United States motion for summary judgment is due to be granted on this claim.

### C. The "Tort of Outrage" or "Intentional Infliction of Emotional Distress" Claim

In his amended complaint, Mr. Noble alleges that the OWCP's conduct in failing to pay his FECA claim for medical expenses in a timely manner constituted the tort of outrage or intentional infliction of emotional distress. The Court will again assume the applicability of Alabama law. While the Alabama Supreme Court has held that the tort of bad faith is barred by the exclusivity provisions of the Alabama Workers' Compensation Act, it has recognized that the tort of outrageous conduct or intentional infliction of emotional distress can occur in a workers' compensation setting. Stewart v. Matthews Industries, Inc., supra. The tort of

outrageous conduct or intentional infliction of emotional distress involves "extreme and outrageous conduct" by one who "intentionally or recklessly causes severe emotional distress to another." American Road Service Co. v. Inmon, 394 So.2d 361, 365 (Ala. 1980). To make out a case of outrageous conduct, the plaintiff must show that the conduct is "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." Id.; see Cates v. Taylor, 428 So.2d 637 (Ala. 1983).

In this case, the allegations of the complaint, which this court will take as true and grant all reasonable inferences in favor therefrom, see Jackson v. Okaloosa County, Fla., 21 F.3d 1531, 1534 (11th Cir. 1994), do not indicate that the OWCP's conduct crosses the threshold that a defendant must cross in order to commit "outrageous conduct" actionable under Alabama law. While there was a significant delay between the time Dr. White first recommended that Mr. Noble undergo corrective back surgery and the time the OWCP actually approved benefits, the allegations of the complaint acknowledge that there was other evidence from qualified medical sources indicating to the OWCP that further testing on Mr. Noble was necessary and that surgery might not be appropriate for him. Thus, it cannot be said that the OWCP's alleged conduct was "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." American Road Service Co. v. Inmon, supra, at 365. See also Farley v. CNA Insurance Co., 576 So.2d 158 (Ala. 1991); Wiggins v. Risk Enterprise Management Ltd., 14 F.Supp. 2d 1279, 1283-85 (M.D. Ala. 1998). Accordingly, the Court concludes that the United States motion to dismiss the outrage claim is due to be granted.

### D. The "Intentional Interference with the Employee/Physician Relationship" Claim

Finally, Mr. Noble has claimed in his amended complaint that by failing to approve benefits in a timely manner, the OWCP committed a tort that he characterizes as "intentional interference with the employee/physician relationship." The United States moves to dismiss

this claim arguing that it is barred by sovereign immunity. The Court agrees. 28 U.S.C. § 2680(h) provides that the United States sovereign immunity waiver of the FTCA does not apply to "[a]ny claim arising out of . . . interference with contract rights." It has been held that a physician may recover damages for alleged tortious interference with contractual relationships with his patients. See, e.g., Kiepfer v. Beller, 944 F.2d 1213 (5th Cir. 1991). However, even assuming that a patient may recover for the alleged interference by a third party with his relationship with his doctor, see Garcia v. Home Depot U.S.A., Inc., ___ F.Supp. 2d ___, 1999 WL 362787, *9 (N.D. Tex. 1999), such a claim would necessarily arise out of an interference with the contract rights between the patient and the doctor. Thus, § 2680(h) applies and the United States retains its sovereign immunity with regard to such a claim under the FTCA. See O'Ferrell v. United States, 968 F.Supp. 1519, 1530 (M.D. Ala. 1997) (holding that § 2680(h) bars FTCA claims for interference with business as claims "arising out of" interference with contract rights). Accordingly, the United States motion to dismiss this claim is due to be granted.

## III. CONCLUSION

For the reasons set forth above, the Court will order that the stay in this action be LIFTED. The Court will GRANT the United States motion to file additional argument on the motion to dismiss the amended complaint (Doc. No. 23) and accordingly will consider the argument contemporaneously submitted with that motion. The United States motion to dismiss the original complaint (Doc. No. 9), which the Court treats as a motion for summary judgment, is due to be GRANTED, as the Court concludes that there exist no material issues of fact and that the United States is entitled to judgment as a matter of law. The Court also rules that the United States motion to dismiss the amended complaint (Doc. 21) is due to be GRANTED. Accordingly, all claims asserted by Mr. Noble are due to be DISMISSED WITH PREJUDICE. In light of these rulings, the United States motions to strike demands in the amended complaint for equitable relief, prejudgment interest, attorney's fees, and punitive

damages (Doc. Nos. 18, 19, 20) will be deemed MOOT.

DONE and ORDERED this 23rd day of September 1999.

_____
H. DEAN BUTTRAM, JR.
UNITED STATES DISTRICT JUDGE